IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT MICHAEL GRAY,<br><br>            Petitioner,<br><br>      vs.<br><br>JEFFREY BEARD, Secretary, California Department of Corrections and Rehabilitation,[1]<br><br>            Respondent. | No. 2:11-cv-2974-JKS<br><br>MEMORANDUM DECISION |

Robert Michael Gray, a state prisoner proceeding *pro se*, filed a Petition for a Writ of

Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  Gray is currently in the custody of

the California Department of Corrections and Rehabilitation and is incarcerated at the North

Fork Correctional Facility in Oklahoma.  Respondent has answered, and Gray has replied.

## I.  BACKGROUND/PRIOR PROCEEDINGS

In satisfaction of a three-count indictment, Gray pled no contest to one count of infliction

of corporal injury on a cohabitant resulting in a traumatic condition in violation of California

Penal Code § 273.5(a) (count one) with an enhancement for personally inflicting great bodily

injury under circumstances involving domestic violence within the meaning of § 12022.7(e).

Pursuant to his negotiated disposition, Gray stipulated to the following facts underlying

his indictment:

> [O]n or about December 29th, 2008, . . . [Gray] assaulted his cohabitating
> girlfriend, K.P., causing a traumatic condition, to wit: A blackened and swollen-shut eye

---

[1]        Jeffrey Beard, Secretary, California Department of Corrections and Rehabilitation, is substituted for Fred Figueroa, former Warden, North Fork Correctional Facility.  FED. R. CIV. P. 25(c).

as well as extensive facial bruising.  [Gray] caused great bodily injury to K.P. during the commission of the domestic violence offense, to wit: four broken orbital bones to her left eye, likely requiring surgery. [¶]  On or about December 1st, 2008, to December 29th, 2008, [Gray] willfully threatened to kill K.P. orally by saying, quote, "I'll put you seven feet under," and [Gray] intended that his statement be understood as a threat.  The threat was so clear, immediate, unconditional and specific that it communicated to K.P. a serious intention and the immediate prospect that the threat would be carried out.  The threat actually caused K.P. to be in sustained fear for her own safety and K.P.'s fear was reasonable under the circumstances since approximately one year prior [Gray] did in K.P.'s presence kill K.P.'s cat by throwing it on the ground like a basketball and then stomping on it.  He then dissected it and strung up its organs.

Pursuant to the plea agreement, the prosecution dismissed the remaining counts subject to a *Harvey* waiver,[2] with the understanding that, in the event the sentencing court denied probation, the total sentence imposed for count one and the enhancement would not be more than seven years of imprisonment.

On January 26, 2009, the probation department issued a report recommending that Gray be placed on probation for a period of three years, although it noted that Gray has "an extremely limited ability to comply with probation" and that his "excessive amount of controlled substance use and verbal threats toward the victim will hinder his ability to comply with probation." *A*ttached to the probation report were character reference letters from Gray's parents, step-parents, and godfather.  Also attached to the report was a letter (the "forged statement") purporting to be from the victim, which stated:

---

[2]     *People v. Harvey*, 602 P.2d 396 (Cal. 1979).  In *Harvey*, the California Supreme Court concluded that facts of dismissed charges that are "[t]ransactionally related" to the admitted charge may be relied upon in sentencing, but held that "facts underlying, and solely pertaining to" dismissed counts cannot be relied upon "absen[t] . . . any contrary agreement." *Id.* at 398-99.  A "*Harvey* waiver" is such a contrary agreement that allows the sentencing court to take account of the facts of the dismissed counts for purposes of sentencing. *See People v. Moser*, 57 Cal. Rptr. 2d 647, 649 (Cal. Ct. App. 1996).

> This has been very tramatic [sic] to me.  I have now left this state, to re-start my life.  My face may never be the same, but most of all, my personal outlook on what was done to me will never be the same.  I am fearful for my mom, who is alone in Yuba County.  Because of "his" father and what transpired in court with my uncle . . . at lunch.
>
> As the daily challenges of healing continue, it is my wish that "he" get all the help available in prison, for I was just sitting on my couch when he unleashed his fist into my face.  I guess what he did to my "cat" should have said something, but in trying to help him, I also feared him.  He always said, "If I can't have you no one will."  "I won't put you 6' under I will go 7' under for possible room for me.
>
> "His" mental issues run deep; woman, anger, aggression, childhood and control.  I hope the counselor is good.  He hides things well.
>
> Again, I continue to pray for healing, with counseling for myself, but also pray for "him" that he uses this time for what it is given.
>
> I pray that this court follows through with the sentencing that has been handed down.  For, at least I am still alive.  I also pray that no harm comes to my mom due to what has transpired in this sentencing.

The same day that the probation report was issued, the victim's witness advocate informed the probation department that she had spoken with the victim, who stated that she had not provided the forged statement.  The victim told the advocate that her mother must have written it and signed the victim's name.  The victim also provided a different phone number because the one previously provided was her mother's number.

Later that day, the probation officer contacted the victim, who verified the information provided by her witness advocate.  The victim stated that she would like to provide a victim statement and requested that the court not consider the letter submitted by her mother, which she had not seen.  The victim's letter stated in relevant part:

> What I would like to see happen to [Gray] is, that he get the minimum amount of time in prison possible that has been offered to him, and while he is there I would like to see him put in some type of drug treatment program, and also go through some psychological counseling I think that it would be very helpful to him.  I also want him to be put in some type of work program while he is in there; he needs to stay busy, because he is not a lazy person.  I hope with everything that has happened he will learn something from this.  This to me is punishment enough for the pain that he has caused me and to him.

3

On January 28, 2009, the probation department informed the court about the true nature

of the forged statement and provided the court the victim impact statement written by the victim.

The probation department also conveyed the victim's request that the court not consider the

forged statement because the victim did not know what her mother had written.

That same day, the prosecution filed a sentencing statement and motion to aggravate

pursuant to Penal Code § 1170(b) and Rule of Court 4.437.  The prosecution asked that Gray's

request for a grant of probation be denied.  The prosecution noted that Gray was statutorily

ineligible for probation based on Penal Code § 1203(e)(3) because he inflicted great bodily

injury in the perpetration of a crime and could only be granted probation if the court found

Gray's case to be one of the "unusual cases where the interests of justice would best be served"

by doing so.  The prosecution argued that Gray's claim that he wished to receive treatment for an

alleged drug condition did not satisfy Rule of Court 4.413(c)(2)(B)[3] because drugs were not the

cause of his criminality and the mental health counseling he had already received had not been

effective.  The prosecution instead sought an imprisonment term of seven years.

On February 2, 2009, Gray appeared for sentencing.  The court stated that it had

"received, read and considered the record in this case, including the probation report."  The court

acknowledged that the report included "letters allegedly from the victim but apparently from the

mother" as well as letters from Gray's parents, step-parents, and godfather.  The court also stated

that it had the memo from the probation officer indicating that the earlier letter had been written

---

[3]        California Rule of Court 4.413(c)(2)(B) mandates that if "[t]he crime was
committed because of a mental condition not amounting to a defense, and there is a high
likelihood that the defendant would respond favorably to mental health care and treatment that
would be required as a condition of probation," that fact "may indicate the existence of an
unusual case in which probation may be granted if otherwise appropriate."

by the victim's mother and attaching the actual letter from the victim.  The court acknowledged

that it also had before it the prosecution's sentencing statement and motion to aggravate.

The court then found that Gray was statutorily ineligible for probation based on his

admission that he willfully inflicted bodily injury in the commission on count one, which was

uncontested because Gray admitted the § 12022.7(e) enhancement.  The court further found that

Gray's case did not constitute an unusual case under the criteria set forth in Rule of Court

4.413(c)(2), stating:

> [A]lthough [Gray] is 21 years of age, which could be considered youthful, he does
> have a significant juvenile record that included a violation of Penal Code Section 422,
> commonly known as the making of criminal threats . . . [and] a juvenile misdemeanor
> conviction for 653(k), possessing a black butterfly knife in his pants' pocket.
> While there are statements by [Gray] and his family that he has a drug problem
> and they seek to have him placed in a drug program, . . . as is pointed out by the
> prosecutor, this is the only evidence of such an alleged addiction, and it is contradicted
> by [Gray's] lack of a prior criminal record for drug or alcohol offenses other than for
> marijuana in 2003 and 2004 for which he was referred to the Pathways Youthful
> Offender Program.
> Moreover, there has been no evidence shown that there is a high likelihood that
> [Gray] would respond favorably to mental health care and treatment.  As suggested by
> the prosecutor, the mental health counseling [Gray] received while on probation as a
> juvenile appears not to have been effective with regard to the anger problems that have
> continually been his excuse for all of his wrongdoing . . . .
> And even if an unusual case finding could be made, the Court does not find that
> [Gray] is amenable to a grant of probation despite the probation officer's analysis.
> The Court has reviewed the [Rule of Court 4.414] criteria as outlined by the
> Probation Department.  The Court finds that the criteria that far outweighs all others is
> Rule 414(b)(4).  The Court, despite the comments of the probation officer, does not find
> that [Gray] has the ability to comply with the terms of probation.  There are deep-seated
> anger and control issues which the Court does not believe [Gray] will be able to
> surmount by a grant of probation.  When someone will tell a significant other that "If I
> can't have you, no one will.  I won't put you six feet under, I'll put you seven for
> possible room for me," according to the letter from the victim's mother, the Court must
> question [Gray's] ability to comply with a grant of probation.  And Rule 414(b)(8),
> [Gray] is seen as a danger to society and so much of a danger to the victim that she fled
> the area to be assured of her safety.

The court then imposed a term of three years for count one and a consecutive term of four years for the enhancement for a total imprisonment term of seven years. With respect to the § 12022.7(e) enhancement, the court found that the victim's bodily injuries were great and noted that she would face "an estimated $75,000 in surgery costs in the future" and that her "mother laments that her daughter's face may never be the same."

Through counsel, Gray appealed his conviction, arguing that: 1) the trial court abused its discretion when it relied on the forged statement in denying probation; 2) the trial court's use of the forged statement violated Gray's right to due process; 3) the imposition of the sentence was based on the court's erroneous use of the forged statement and was thus improper; 4) defense counsel was ineffective for failing to object to the court's use of the forged statement; and 5) the forged statement should be stricken from the probation report.

The California Court of Appeal affirmed his conviction in an unpublished, reasoned opinion. The appellate court rejected his abuse of discretion claim on procedural grounds, noting that defense counsel's failure to object to the statement's use forfeited Gray's right to raise the issue on appeal. The appellate court alternatively denied the claim on the merits, finding "nothing in the record to suggest that the court ignored any of the evidence before it, nor is there evidence that the court's minimal reliance on the forged statement was improper." The appellate court additionally rejected his due process claim after concluding that Gray "has not shown that the sentencing procedures were fundamentally unfair." The appellate court also determined that the imposed sentence was not improper because "the court's minimal references to the forged statement were corroborated by the stipulated facts and other evidence in the record." The appellate court likewise found no ineffective assistance of counsel because, given its conclusion

6

that the trial court's use of the forged statement was neither "demonstrable nor improper," any

failure of counsel to object was "harmless under any standard."  Finally, the appellate court

rejected Gray's request to strike the forged statement from the probation report, finding no

authority requiring it to be stricken and noting that "any confusion [as to the author] is clarified

by the record."  Gray requested rehearing, which the appellate court denied.  Gray then

petitioned for review of the decision to the state supreme court, which was denied without

comment on October 20, 2010.

On August 1, 2009, Gray filed a *pro se* petition for a writ of habeas corpus with the

California Court of Appeal, asserting that: 1) the sentencing judge should have recused herself

from his case because she was a "victim of Domestic Violence/Abuse during her tenancy as an

appointed judge" and that her failure to do so subjected Gray to judicial bias; 2) the trial court

abused its discretion "by acknowledging a forged document . . . whereby contributing to bias at

sentencing"; and 3) his counsel was ineffective for "failing to conduct a reasonable pre-trial

investigation" into Gray's drug use and juvenile record and the sentencing judge's "domestic

past of violence."  The appellate court summarily denied the petition on August 13, 2009.  Gray

raised the same claims in a petition for a writ of habeas corpus to the California Superior Court,

which was denied on September 2, 2009.

Gray timely filed a petition for a writ of habeas corpus to this Court on November 7,

2011.

## II. GROUNDS/CLAIMS

Gray asserts four grounds for habeas relief.  First, he contends that the trial court abused

its discretion in relying on the forged statement.  Second, Gray argues that his right to due

process was violated by the trial court's use of the forged statement.  Third, Gray asserts that he was subjected to "judicial abuse" because the sentencing judge did not recuse herself from his case.  Finally, Gray claims that the trial court abused its discretion "by acknowledging a forged document."

### III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."  *Id.* at 412.  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.  *Early v. Packer*, 537 U.S. 3, 10 (2002).  Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"  *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court.  *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)).  A state court is not required to give reasons before its decision can be deemed to be "adjudicated on the merits."  *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011).  Where there is no reasoned state-court decision denying a claim presented to the state, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.  *Id.* (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989)).  Where the presumption applies, this Court must perform an independent review of the record to ascertain whether the state court decision was "objectively unreasonable."  *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006) (quoting *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir 2005) (per curiam)).  Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A.      Exhaustion

This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases).  To be deemed exhausted, a claim must have been presented to the highest state court that may consider the issue presented.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To have properly exhausted his state court remedies, Gray must have presented both the legal arguments and the factual basis to the highest state court.  *See Peterson v. Lampert*, 319 F.3d 1153, 1155-56 (9th

Cir. 2003).  As Respondent correctly notes, although Gray raised claims three and four in his

petition for habeas corpus before the California Court of Appeal, he failed to present the claims

to the California Supreme Court after the Court of Appeal summarily denied the claims.

Accordingly, Gray has failed to exhaust claims three and four.

Unexhausted claims must be dismissed.  *See Rhines v. Weber*, 544 U.S. 269, 275-78

(2005).  However, this Court need not rely on this basis as it may deny the petition on the merits

notwithstanding the lack of exhaustion of state court remedies.  28 U.S.C. § 2254(b)(2) ("An

application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure

of the applicant to exhaust the remedies available in the courts of the State.").  Accordingly, this

Court declines to dismiss the unexhausted claims solely on exhaustion grounds and will instead

reach the merits of the claims as discussed below.

B.      Merits

Claim One: Whether the trial court abused its discretion in relying on the forged
statement

Gray first argues that the trial court "abused its discretion when it relied on a forged

victim impact statement to deny [Gray] probation and impose a middle term prison sentence on

him, a first time domestic violence offender, instead of granting him probation as recommended

by the probation report."  On direct appeal, the appellate court rejected Gray's contention,

concluding:

> There is nothing in the record to suggest that the court ignored any of the
> evidence before it, nor is there evidence that the court's minimal reliance on the forged
> statement was improper.  As noted in its tentative decision, the court placed
> "considerable significance and weight" on the evidence stipulated to by defendant of his
> recent threats on the victim's life and his vicious killing of the victim's cat one year prior.
> Because that evidence alone supports the court's determination that defendant was a
> danger to the victim and society, it is not reasonably probable that the court would have

granted probation in the absence of the forged statement.  Defendant has not shown any demonstrable error.

Gray's claim that the trial court abused its discretion in relying on the forged statement raises an issue of state law that is not cognizable on federal habeas review.  *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied).  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.  *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).  A "state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting that a state appellate court's determination of state law is binding and must be given deference).

Moreover, the Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts."  *Crane v. Kentucky*, 476 U.S. 683, 689 (1986).  In criminal actions, "[t]he States are free to provide such procedures as they choose, including rules of evidence, provided that none of them infringes a guarantee in the Federal Constitution."  *Burgett v. Texas*, 389 U.S. 109, 113-14 (1967).  Although the Ninth Circuit has suggested that an abuse of discretion may also amount to a constitutional violation, *see Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc), the Supreme Court has never

held that abuse of discretion is an appropriate basis for granting federal habeas relief.[4]  Indeed,

quite to the contrary, the Supreme Court has strongly suggested that, while abuse of discretion is

an appropriate standard on direct review, in a federal habeas proceeding it is not.  *Renico v. Lett*,

559 U.S. 766, 772-73 (2010) ("It is not even whether it was an abuse of discretion for her to have

done so–the applicable standard on direct review.  The question under AEDPA is instead

whether the determination of the Michigan Supreme Court that there was no abuse of discretion

was "an unreasonable application of . . . clearly established Federal law." (quoting §

2254(d)(1))).  Accordingly, to the extent that Gray contends that the court abused its discretion

in relying on the forged statement, Gray has failed to raise a claim of constitutional dimension

cognizable in this Court.  He is therefore not entitled to relief on his first claim.

<u>Claim Two: Whether the trial court's use of the forged statement violated Gray's right to
due process</u>

In a related argument, Gray next claims that "[t]he court's use of the forged victim

impact statement in [Gray's] sentencing produced a fundamentally unfair sentence in violation of

the due process clause of the Fourteenth Amendment of the United States Constitution."  The

appellate court also rejected this claim on direct appeal, finding the claim forfeited on appeal

because Gray failed to raise the issue at trial and alternatively denying it on the merits because

---

[4]        At one time, the Ninth Circuit viewed a state court ruling to be "objectively
unreasonable" if it amounted to a clear error.  *Van Tran v. Lindsey*, 212 F.3d 1143, 1152-54 (9th
Cir. 2000).  This is the test the Ninth Circuit uses in reviewing a trial court decision under the
abuse of discretion standard.  *United States v. Ressam*, 679 F.3d 1069, 1086 (9th Cir. 2012) (en
banc).  The Supreme Court noted *Van Tran's* statement of the test and expressly rejected it as
inappropriate under the AEDPA.  *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003) (clear error
standard is insufficiently deferential to state courts).

"the trial court did not rely demonstrably on the forged statement as the basis for the sentence."

The court continued:

> Without belaboring the point, the court made only a few direct references to
> information contained in the forged statement, each time referring to facts that were
> either stipulated to by [Gray] or otherwise corroborated in the record, or both.  While
> [Gray] speculates that some other of the court's comments are derived from information
> in the forged statement, we need not indulge in such speculation because the court's
> comments are otherwise supported by the record, as previously discussed at length in this
> opinion.
>      [Gray] makes much of the fact that the court's conclusion differed from the
> recommendation of the probation report.  Again, that fact is of little consequence, given
> that the court is not compelled to follow probation's recommendation.  Similarly, the
> court is not compelled, as [Gray] claims, to make direct reference to, or acknowledge
> information from, K.P.'s letter.

As an initial matter, because the state appellate court found Gray's claim forfeited under

California's contemporaneous objection rule, the claim is procedurally defaulted from federal

habeas review.  *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (a federal court will not

review a claim if the state court's rejection of the claim rests on a state law ground that is

independent of the federal question and adequate to support the judgment).  The Ninth Circuit

has repeatedly recognized and applied the California contemporaneous objection rule in

affirming denial of a federal habeas petition on grounds of procedural default where there was a

complete failure to object at trial.  *See, e.g.*, *Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th

Cir. 2005); *Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004).  Because the state

appellate court held that the claim was thereby forfeited under California's contemporaneous

objection rule, Gray's due process claim may be deemed procedurally defaulted.

In any event, Gray's claim also fails on the merits and even assuming that Gray could

demonstrate that, contrary to the state appellate court's conclusion, the forged statement was

irrelevant or overtly prejudicial.  "The Supreme Court has made very few rulings regarding the

13

admission of evidence as a violation of due process." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009). "Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Id.* (citing *Williams*, 529 U.S. at 375). Absent such "clearly established Federal law," it cannot be concluded that the appellate court's ruling was an "unreasonable application." *Carey*, 549 U.S. at 77 (noting that, where the Supreme Court has not adequately addressed a claim, a federal court cannot find a state court ruling unreasonable). Accordingly, under the strict standards of the AEDPA, Gray is not entitled to relief on this claim either.

    Claim Three: Whether the trial judge was required to recuse herself

    Gray next contends that the trial judge's failure to recuse herself pursuant to California Code of Civil Procedure §170.1(a)(6)(A)[5] and 29 U.S.C. § 455(a)[6] "rendered judicial abuse . . .

---

    [5]    That section provides:

A judge shall be disqualified if any one or more of the following are true:
. . .
(i)     The judge believes his or her recusal would further the interests of justice.
(ii)    The judge believes there is a substantial doubt as to his or her capacity to be impartial.
(iii)   A person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial.

CAL. CODE CIV. PROC. § 170.1(a)(6)(A).

    However, to the extent that Gray claims that the judge violated state law by failing to recuse himself, Gray is not entitled to habeas relief on any such claim. Again, federal habeas relief is available only for violations of the Constitution, treaties or laws of the United States. *See* 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral

whereby depriving [Gray] a reliable sentence under the Fifth Amendment to the Constitution."

Gray raised this claim before the California Court of Appeal in his state petition for habeas

relief, which the appellate court summarily denied.

Respondent contends that, because Gray did not object at trial to any alleged judicial bias

or seek to disqualify the judge pursuant to Code of Civil Procedure § 170.3, Gray's claim is

procedurally defaulted and thus not properly before this Court.  Section 170.3(c)(1) provides that

any party can lodge an objection to a judge by "setting forth the facts constituting the grounds

for disqualification of the judge."  CAL. CODE CIV. PROC. § 170.3(c)(1).  While it is true that the

failure to object below regarding an alleged judicial bias ordinarily waives the issue from further

review, *see People v. Snow*, 65 P.3d 749, 768 (Cal. 2003), Gray does not state in his Petition

when he discovered the facts underlying his judicial bias claim, and his claim is not predicated

on any demonstrable bias exhibited during the proceedings.  Section 170.3(c)(1) provides only

that "[t]he statement shall be presented at the earliest practicable opportunity after discovery of

the facts constituting the ground for disqualification."  CAL. CIV. CODE PROC. § 170.3(c)(1);

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).  Construing his *pro se* pleadings

liberally, this Court will presume that Gray discovered the facts underlying his claim after trial

and sentencing and therefore will address the claim on the merits.

_____

attack in the federal courts.").

6        It appears that Gray is referring to 28 U.S.C. § 455(a) which provides that "[a]ny
justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding
in which his impartiality might be questioned."  However, because the trial judge is a state judge
rather than a federal "judge of the United States," this statutory provision does not apply in
Gray's case.

The Supreme Court has recognized that "the right to an impartial judge [is] among those 'constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error.'" *Greenway v. Schriro*, 653 F.3d 790, 805 (9th Cir. 2011) (quoting *Chapman v. California*, 386 U.S. 18, 23 (1967)).  Where judicial bias is claimed, habeas relief is limited to circumstances in which the state trial judge's behavior rendered the trial so fundamentally unfair as to violate due process.  *See Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995).  To succeed on a judicial bias claim, a habeas petitioner must "overcome a presumption of honesty and integrity in those serving as adjudicators."  *Withrow v. Larkin*, 421 U.S. 35, 47 (1975); *Larson v. Palmateer*, 515 F.3d 1057, 1067 (9th Cir. 2008).

Gray claims that the trial court judge was biased against him because in 2004 she had sought a protection order against her son.  Gray further alleges that the judge's "sentencing contrary to the probation report shows her rendered judicial abuse by failing to recuse herself."  Pet. at 55.  Gray's conclusory statements are insufficient, however, to demonstrate that the trial judge was personally biased against him, engaged in misconduct, or otherwise deprived Gray of a fundamentally fair proceeding.  The Ninth Circuit has repeatedly recognized that adverse rulings alone are insufficient to demonstrate judicial bias.  *Larson v. Palmateer*, 515 F.3d 1057, 1067 (9th Cir. 1995); *Taylor v. Regents of the Univ. of Cal.*, 993 F.2d 710, 712-13 (9th Cir. 1993); *Davis v. Fendler*, 650 F.2d 1154, 1163 (9th Cir. 1980).  Moreover, a review of the record as a whole reveals that the judge's comments during sentencing demonstrate empathy for the victim and her concern that probation would not provide Gray with adequate rehabilitation measures.  They do not reflect unfair prejudice or "a predisposition . . . so extreme as to display

16

clear inability to render fair judgment." *Liteky v. United States*, 510 U.S. 540, 551 (1994).  As

the Supreme Court has explained:

> We have never suggested that the United States Constitution requires that the sentencing process should be transformed into a rigid and mechanical parsing of statutory aggravating factors.  But to attempt to separate the sentencer's decision from his experiences would inevitably do precisely that.  It is entirely fitting for the moral, factual, and legal judgment of judges and juries to play a meaningful role in sentencing.

*Barclay v. Florida*, 463 U.S. 939, 950-51 (1983) (rejecting claim challenging judge's comments

to his own World War II experience); *see also Barber v. Gladden*, 327 F.2d 101, 104-05 (9th

Cir. 1964) (judge's discussion of his boyhood experience regarding a robbery at his father's store

did not demonstrate bias at sentencing); *Mann v. Thalacker,* 246 F.3d 1092, 1101 (8th Cir. 2001)

(judge's remarks about personal experience as sexual abuse victim did not establish partiality

against the defendant).

Even broadly construing the need to avoid the appearance of impropriety, Gray fails to

present evidence suggesting that "a reasonable person with knowledge of all the facts would

conclude that the judge's impartiality might reasonably be questioned."  *Herrington v. Sonoma*

*Cnty.* 834 F.2d 1488, 1502 (9th Cir. 1987) (citation omitted).  As the Ninth Circuit has

recognized, the Supreme Court has found the appearance of bias, rather than the demonstration

of actual bias, sufficient to require recusal in only a few limited circumstances.  *Greenway*, 653

F.3d at 806; *Crater v. Galaza*, 491 F.3d 1119, 1131 (9th Cir. 2007).  "First, due process requires

recusal of a judge who 'has a direct, personal, substantial pecuniary interest in reaching a

conclusion against [one of the litigants].'"  *Crater*, 491 F.3d at 1131 (quoting *Tumey v. Ohio*,

273 U.S. 510, 523 (1927)).  "Second, due process requires recusal if a judge becomes 'embroiled

in a running, bitter controversy' with one of the litigants."  *Id.* (quoting *Mayberry v.*

*Pennsylvania*, 400 U.S. 455, 465 (1971)).  "Third, due process requires recusal if the judge acts

as 'part of the accusatory process.'" *Id.* (quoting *In re Murchison*, 349 U.S. 133, 137 (1955)).

More recently, the Court held in a case where one litigant was a large donor to the judge's

election campaign that recusal was required when "the probability of actual bias on the part of

the judge or decisionmaker is too high to be constitutionally tolerable."  *Greenway*, 653 F.3d at

806 (quoting *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 872 (2009)).  Gray's recusal

"claim does not suggest any possible connection of the trial judge to his case that approaches the

prior involvement of the judges in *Tumey, Murchison, Mayberry ,* or *Caperton*."  *Greenway*, 653

F.3d at 807 (rejecting judicial bias claim where judge had worked with victims' family member

for a few months 18 years before the trial).

      Because Gray's contention that the trial judge's past experience with domestic violence

rendered her biased against him is based on pure speculation and Gray fails to demonstrate either

actual bias or even an appearance of impropriety, Gray is not entitled to habeas relief on this

claim.

      <u>Claim Four: Whether the trial court abused its discretion in "acknowledging" the forged
statement</u>

      Finally, Gray asserts that the trial court abused its discretion when it "acknowledg[ed] a

forged document."  Gray also presented this claim to the California Court of Appeal in his state

habeas petition, which was summarily denied.

      It appears that Gray argues in this claim that the court's mere acknowledgement of the

forged statement, as opposed to its reliance as alleged in claim one, was error.  But as discussed

with regards to claims one and two, *infra*, Gray cannot show that the trial court's consideration

of the forged statement violated his due process rights and, even if it did amount to an abuse of

discretion, such claim is not cognizable on federal habeas review.  Accordingly, Gray cannot

prevail on this claim for the same reasons he could not prevail on claims one and two.

## V. CONCLUSION AND ORDER

Gray is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ

of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of

Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain

a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree

with the district court's resolution of his constitutional claims or that jurists could conclude the

issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the

Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); Ninth Circuit R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: October 31, 2013.

/s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge